STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff-Appellee, v. PEGGY KLECKNER, as Special Adm'r of the Estate of Alex Kleckner, Deceased, and as Mother and Next Friend of Suzanne Kleckner, a Minor, Defendant-Appellant (Melvin Harms et al., Defendants).

Second District   No. 2—89—0579

Opinion filed February 20, 1990.

Robert J. Cooney, Jr., and James E. Ocasek, both of Cooney & Conway, of Chicago, for appellant.

Victor J. Piekarski, of Querry & Harrow, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Peggy Kleckner, appeals from an order in this declaratory judgment action in which the trial court found that none of four insurance policies issued by plaintiff, State Farm Fire and Casualty Company (State Farm), to Melvin and Evelyn Harms extended coverage for defendant's losses. Defendant contends that each policy applies because the policies' provisions do not limit their coverage. Alternatively, defendant asserts that State Farm waived its rights to deny coverage. We affirm.

The record on appeal reveals the following facts. On September 3, 1984, defendant's eight-year-old son, Alex Kleckner, and five-year-old daughter, Suzanne Kleckner, were riding a mini dirt bike at the Maplehurst Cycle Park located on Wilmot Road, Spring Grove, Illinois. Alex was piloting the vehicle when he apparently left the "bunny" track and accidentally entered the "expert" track going the wrong way. He and his sister were hit by another motorcyclist. Alex died as a result of the collision, and Suzanne sustained serious injuries. Defendant, as special administrator for Alex's estate, and as mother and next friend of Suzanne, commenced a personal injury action

against Maplehurst Cycle Park; Harms Realty Investment Corporation, which leased the property on which the park was located; Robert Banasack, the president and a shareholder in Harms Realty; and Melvin and Evelyn Harms, who owned the property. Defendant's second amended complaint, filed March 6, 1987, alleged that Maplehurst and Banasack operated and managed the motorcycle park which was known as Turtle Track Race Course; defendant further alleged that the Harmses and Harms Realty Investment Corporation owned and controlled the premises and motorcycle track on Wilmot Road. Defendant's personal injury complaint alleged negligence on the part of all the named defendants and sought damages for Alex's death and Suzanne's injuries.

State Farm, which had issued several insurance policies to Melvin and Evelyn Harms, filed a complaint for declaratory judgment on August 17, 1988, in which it requested a court order declaring that defendant was not entitled to the benefit, protection or coverage of any of the Harmses' policies. These policies include: (1) a homeowners policy which specified the insured premises as 327 Burnett, Lake Villa, Illinois (the Harmses' residence); (2) a rental dwelling policy which specified the "location of premises" as 41061 North Second Street, Antioch, Illinois; (3) a business liability policy which designated as the covered premises the site of Melvin Harms' former refrigeration sales and service business at 100-102 South Milwaukee Avenue, Lake Villa; and (4) an "umbrella" personal liability policy providing excess liability coverage for losses covered by the underlying policies listed on its declaration page.

After defendant and other named parties had filed answers, State Farm moved for judgment on the pleadings pursuant to section 2—615(e) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(e)) with respect to the homeowners and rental dwelling policies. Shortly thereafter, State Farm requested summary judgment pursuant to section 2—1005 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005) with respect to the business liability and umbrella policies. In a written memorandum order, the trial court analyzed definitional and exclusion language contained in each of the policies and concluded that none extended coverage to the losses sustained by defendant's decedent and minor child. Thus, the trial court granted summary judgment on counts I and II (the business liability and umbrella policies counts) and judgment on the pleadings on counts III and IV (the homeowners and rental dwelling policies) for State Farm. The trial court concluded that State Farm was not obligated to defend or indemnify Melvin and Evelyn Harms in defendant's personal injury

action against them. Defendant's timely appeal ensued. The sole issue presented on appeal is whether any or all of the four insurance policies furnished by State Farm to Melvin and Evelyn Harms provide coverage for the losses sustained by defendant's decedent and minor child.

At the outset, we note that a motion for judgment on the pleadings is similar to a motion for summary judgment since both require the trial court to examine the pleadings in order to determine the existence or absence of a genuine issue of material fact and, in the absence of such an issue, whether the movant is entitled to judgment as a matter of law. (*Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 842; *Mitchell v. Waddell* (1989), 189 Ill. App. 3d 179, 181-82.) A motion for judgment on the pleadings differs from a summary judgment motion in that the former asserts that the movant is entitled to judgment solely on the basis of the pleadings, while the latter may include affidavits, deposition transcripts and other evidentiary documents in order to establish the absence of a factual issue. (*Mitchell*, 189 Ill. App. 3d at 182.) Both motions are properly granted when the pleadings (and in the case of a motion for summary judgment, the affidavits, depositions and other documents) establish the absence of a genuine issue of material fact and the moving party's entitlement to judgment as a matter of law. (*Allstate Insurance Co. v. Tucker* (1989), 178 Ill. App. 3d 809, 812; *Pfeil v. Weerde* (1987), 152 Ill. App. 3d 759, 760.) The standard of review for the granting of both orders is similar: the reviewing court must determine whether the trial court properly ruled on the absence of a genuine issue of material fact and, if so, whether judgment was proper, that is, whether the prevailing party was entitled to judgment as a matter of law. *Hagy*, 190 Ill. App. 3d at 842-43; *Upper Avenue National Bank v. First Arlington National Bank* (1980), 81 Ill. App. 3d 208, 210.

The trial court properly determined that the issue presented to it, *i.e.*, the applicability of Melvin and Evelyn Harms' four insurance policies to defendant's losses, is grounded solely on the construction of the language contained in the four insurance policies. The rules of contract construction apply to a court's interpretation of insurance policy language. (*Nationwide Mutual Insurance Co. v. Hecker* (1989), 183 Ill. App. 3d 13, 15.) Such matters present questions of law only; thus, the trial court properly proceeded to examine the policies' provisions and construe their language. (*Kravis v. Smith-Marine, Inc.* (1974), 20 Ill. App. 3d 483, 487.) We will consider each of the four policies in turn.

The homeowners policy contained a declaration page on which the location of the premises specified the Harmses' home address, 320 Burnett, Lake Villa, Illinois. By its terms, the policy provided coverage to "the dwelling on the *residence premises* shown in the declarations used principally as a private residence, including structures attached to the dwelling." (Emphasis in original.) The policy defined "residence premises" as the dwelling and other structures and grounds in which the named insured resides and which is stated on the declarations page. In addition to the residence premises as defined, the policy included under the term "insured location," *inter alia,* "500 acres or less of farm land (without buildings) rented to others." This policy specifically excluded property coverage on structures used partially or wholly for business purposes. Liability coverage contained in the policy specified that coverage for medical payments applied only to persons injured on the insured location or to persons off the insured location, "if the *bodily injury*: (1) arises out of a condition in the *insured location*; (2) is caused by the activities of any *insured.*" (Emphasis in original.) The exclusions portion of the policy exclusively stated that liability and medical coverages were not applicable to bodily injuries arising out of any insured's business pursuits or out of the rental or holding for rental of any premises by any insured. The exclusion provisions further stated that such coverages were not applicable to *"bodily injury* \*\*\* arising out of any premises owned [by] or rented to any *insured* which is not an *insured location."* (Emphasis in original.)

■ A straightforward reading of the provisions noted above resolves any doubt concerning the policy's coverage and supports State Farm's position. It is clear that defendant's losses, *viz.,* Alex's death and Suzanne's injuries, did not occur on an "insured location" but on other property owned by the insured and not included on the policy. It is obvious that the Wilmot Road address in Spring Grove, McHenry County, was not the Harmses' residence, which was located in Lake Villa, Lake County. Defendant contends that the 500-acre farm definition of "insured location" is applicable here, as the Spring Grove property was characterized as a farm in the Harmses' lease with Harms Realty Investment Corporation. The plain language of the policy, however, specifies "500 acres or less of farm land *(without buildings)* rented to others." (Emphasis added.) The record establishes that the 60 acres located on Wilmot Road contain not one but six buildings. We think it immaterial that defendant's losses did not arise from conditions in or around these buildings. Nevertheless, even if we were to accept defendant's tortured interpretation of the definition of "in-

sured location," the fact that the Harmses held the property for rental purposes plainly excludes the defendant's injuries from coverage. The trial court correctly concluded that the homeowners policy did not extend coverage to defendant's losses.

The rental dwelling policy specified the premises as 41061 North Second Street, Antioch (Lake County) Illinois. The policy defined "insured premises" as the "residence premises," which in turn was defined as "the one or two family dwelling, other structures and grounds shown in the declarations." An additional definition of "insured premises" is stated as "one or two family dwelling premises alienated by any *insured* if possession has been given to others." (Emphasis in original.) Because the Harmses' daughter and son-in-law resided in a house located on the Spring Grove property, defendant contends that the location falls under this heading. As State Farm points out, however, there is no indication in the record whatsoever that the Harmses ever rented or otherwise alienated this property. Finally, the policy specifically excludes liability and medical coverages for injuries arising "out of premises other than the *insured premises*." (Emphasis in original.)

■ The trial court correctly concluded that defendant's losses did not occur on "insured premises," and we note that the exclusion provision expressly precludes coverage of losses arising elsewhere. The record establishes that the race course was not located at the residence premises in Antioch; similarly, the record fails to establish that the Harmses rented or otherwise alienated (as that word is used in the policy) the Spring Grove property. In conclusion, neither the homeowner nor the rental dwelling policies furnished by State Farm to Melvin and Evelyn Harms provided coverage for defendant's losses. Thus, the trial court correctly determined that State Farm was entitled to judgment on the pleadings as a matter of law with respect to these two policies.

Accompanying its motion for summary judgment with respect to the business liability and umbrella policies, State Farm submitted, *inter alia*, Melvin Harms' discovery deposition and numerous corporate records for Harms Realty Investment Corporation. In his deposition, Harms testified that he owned the property at Wilmot Road in Spring Grove but did not hold an insurance policy for it. He stated that he leased the property to Harms Realty Investment Corporation, a closely held corporation in which his daughter and son-in-law were the sole shareholders. Harms admitted that he was a corporate officer and had assisted in the incorporation of the business entity; however, he testified that he neither invested in nor performed services for the

corporation. Additionally, he stated he received no benefits from the corporation other than rental payments for the Spring Grove property. Although Harms testified that he held 33 or 36 shares of Harms Realty, the corporate records reveal that out of the 100 shares issued, 67 were held by his son-in-law, Robert J. Banasack, and the remaining 33 were held by his daughter, Lynette Banasack. Harms stated that he leased the entire 60 acres on Wilmot Road to Harms Realty but was unaware of any sublease between Harms Realty and Maplehurst Cycle Park. He stated that two corporations, Maplehurst Trails and Maplehurst Snow Tubing, of which his daughter and son-in-law were the shareholders, conducted dirt-biking and snow-tubing operations on the property. Harms stated that he did not perform any services for and did not receive any remuneration or compensation for the operation of either business. He further stated that he did not supervise, oversee or take part in the operation of these two businesses.

Harms further testified that he had held insurance on the Wilmot Road property at one time but did no longer. He stated that State Farm had indicated it was uninterested in insuring this property. He testified that he believed at one time his son-in-law had held a policy from Lloyds of London but was unsure of any additional information.

With regard to his own business pursuits, Harms testified that he had been in the refrigeration sales and service business until February 1, 1984, at which time he retired. His business was located at 100-102 South Milwaukee Avenue, Lake Villa, Illinois, where he had constructed the business building in 1956. He testified that he had sold the business but continued to own the building and maintained a business liability policy on it. He also testified that he held an "excess" policy which he obtained upon the recommendation of his insurance agent. He understood this policy to provide excess coverage in addition to that provided by his business policy, his rental policy and automobile policies.

■ We turn now to a consideration of the business liability policy. The policy's declaration page specifies the Lake Villa location noted above as the "location of covered premises." The declarations further designate the named insured as Harms and state that he is an individual. The policy, by its own express terms, provides liability coverage to the person or persons named on the declarations page as an individual, "only with respect to the conduct of business of which [he is] the sole proprietor." Defendant claims that Harms' rental of the Spring Grove property to Harms Realty Investment Corporation constituted a business of which Harms was the sole proprietor. Nevertheless, we think it clear that Harms' act of renting the property had no

bearing on or connection to defendant's losses, which occurred while her children were customers of Maplehurst Cycle Park, a corporate entity not designated anywhere as a named insured on Harms' business policy. As defendant notes in her reply brief, the coverage issue of the business policy is whether Melvin Harms' activities at the motorcycle course on the Spring Grove property are business activities not otherwise excluded by the business policy. It is clear that his activity as a landlord is excluded. Harms neither owned nor operated the motorcycle park and had no financial interest in or business connection to the entity which did operate it. Further, although defendant's children sustained injuries on property owned by Harms, the children were neither guests nor customers of Harms; Harms did not provide them with any goods or service and had no business relationship with them of any kind. In short, the tragic injuries sustained by defendant's minor children did not arise out of the conduct of a business of which Harms was the sole proprietor; thus the business liability policy issued to him by State Farm did not extend coverage for these losses.

▮ Lastly, we examine the umbrella policy. Its declaration page lists a number of underlying insurance policies, including auto liability, recreational vehicle liability, comprehensive personal liability and water craft liability. The policy excludes coverage for losses caused by the insured's business operations unless underlying insurance listed on the declaration page provides coverage for such loss. In other words, this umbrella policy only provided insurance coverage in excess of other policies held by the insured and specifically listed on the policy's declaration page. We think it is clear that the umbrella policy would provide such excess coverage for losses caused by Harms' business operations only if Harms held an underlying policy which would cover the losses. Even if Harms' "business" was renting the Spring Grove property to Harms Realty Investment Corporation, the umbrella policy fails to provide coverage for the rental because Harms had no underlying insurance policy for the rental. Further, even if we were to conclude that Harms' other policies (specifically, his business liability or rental dwelling policy) did provide coverage to this rental property, defendant's losses were not caused by the rental of such property. As noted above, defendant's minor children incurred their injuries while they were customers of Maplehurst Cycle Park, a corporate entity unrelated to Harms.

In view of the facts discussed above, we conclude that the trial court properly granted summary judgment for State Farm with regard to the business and umbrella policies.

We now consider defendant's contention that State Farm waived its rights to deny coverage under the homeowner and rental dwelling policies. The trial court found, and we agree, that defendant's losses did not occur on an insured location, within the meaning of either policy. Further, the losses arose out of a business activity entirely unrelated to the insured. We note, as did the trial court, that State Farm provided Melvin Harms with a reservation of rights letter on November 14, 1986, in which it denied coverage under the homeowners policy because: (1) the losses involved a business pursuit, and (2) the losses did not occur on an insured location.

■ Further, although the reservation of rights letter did not specifically deny coverage under the rental dwelling policy, this omission does not operate to waive State Farm's rights as to this policy. As State Farm observes in its appellate brief, insurance coverage cannot be "waived" into existence. The rental dwelling policy simply does not provide insurance coverage for the Spring Grove property, and State Farm's alleged waiver does not alter the policy's definition of "insured premises." We hold that State Farm did not waive any rights under either policy.

Accordingly, the judgment of the trial court of McHenry County is affirmed.

Affirmed.

McLAREN and REINHARD, JJ., concur.