*In re* ESTATE OF MICHAEL H. DAVIS, Deceased (Richard W. Waller *et al.*, Ex'rs of the Estate of Michael H. Davis, Deceased, Petitioners-Appellees, v. Carol B. Davis, Respondent-Appellant).

Second District   No. 2—91—0184

Opinion filed March 10, 1992.

Michael J. Kralovec and Daniel C. Meenan, Jr., both of Feiwell, Galper & Lasky, Ltd., and Jeffrey B. Steinback, of Genson, Steinback & Gillespie, both of Chicago, for appellant.

Altheimer & Gray, Arthur M. Holtzman, of Pedersen & Houpt, P.C., Richard A. Lang, of Kirkland & Ellis, and James C. Murray, Alexander R. Rothrock, and Mark L. Johnson, all of Katten, Muchin & Zavis, all of Chicago, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, Carol B. Davis, appeals from the order of the circuit court of Du Page County which granted petitioner's motion for judgment on the pleadings and to strike affirmative defenses. We affirm.

The marriage of Michael and Carol Davis was dissolved on July 27, 1983. As part of the property settlement agreement pursuant to the dissolution, Carol waived her right to specific shares of stock in Michael's company, Victory Beauty Supply Company, Inc., 77 shares of which were held at that time in Lake Shore National Bank IRA No. 5013. The only beneficiary ever designated under that account was Carol.

Michael Davis died on March 22, 1990. Both Carol and the independent co-executors of the estate claimed the account proceeds which then allegedly included some $3 million from the sale of Victory Beauty Supply Company stock. On May 16, 1990, the co-executors filed a petition seeking, among other things, an order declaring the estate to be the beneficiary of the IRA in light of the parties' divorce, Carol's waiver in the property settlement agreement of any rights in the stock held in the IRA, and the operation of section 1 of the Trusts and Dissolutions of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 148, par. 301). Lake Shore National Bank filed an answer requesting an order directing it as to the legal rights of the estate. The bank is merely a stakeholder and is not a party to this appeal. Carol filed an answer and affirmative defenses to the petition, seeking an order denying the relief sought in the petition and acknowledging her status as the proper beneficiary of the trust.

In October 1990, the co-executors filed a motion seeking judgment on the pleadings and the striking of Carol's affirmative defenses, pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615(e), (a)). After full briefing and oral argument, the court granted judgment on the pleadings in the co-execu-

tors' favor and struck Carol's affirmative defenses. This appeal followed.

■■■ A motion for judgment on the pleadings is based on admissions in an opposing party's pleadings, whereas a motion to strike challenges whether the pleader has a valid cause of action or defense even if all the facts alleged by the pleader are taken as true. (*Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 188-89.) Both motions are determined solely on the basis of the pleadings in order to determine the existence or absence of a genuine issue of material fact and, in the absence of such an issue, whether the movant is entitled to judgment as a matter of law. (*State Farm Fire & Casualty Co. v. Kleckner* (1990), 194 Ill. App. 3d 371, 375.) This contrasts, for example, with summary judgment motion practice where judgment on the motion may also include consideration of affidavits, deposition transcripts and other evidentiary documents in order to establish the absence of a factual issue. *State Farm Fire & Casualty Co.*, 194 Ill. App. 3d at 375; Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.

Exhibits attached to pleadings such as the motions at bar are considered part of the pleadings for all purposes where the pleading is founded on such exhibits. (Ill. Rev. Stat. 1989, ch. 110, par. 2—606.) Allegations in the pleading which conflict with facts disclosed in the exhibits are not admitted as true but, rather, the exhibit controls. (*McCormick v. McCormick* (1983), 118 Ill. App. 3d 455, 460.) Also, exhibits attached to pleadings simply as an example of the evidence supporting the pleader's allegations are not taken as true and are not controlling. *Jones v. Lazerson* (1990), 203 Ill. App. 3d 829, 836; *McCormick*, 118 Ill. App. 3d at 460-61.

On a motion for judgment on the pleadings, if the pleadings put in issue one or more material facts, evidence must be taken to resolve such issues, and judgment may not be entered on the pleadings. (*Village of Worth v. Hahn* (1990), 206 Ill. App. 3d 987, 990.) On review, the court must determine whether any genuine issue of material fact exists and, if not, whether the prevailing party was indeed entitled to judgment as a matter of law. *State Farm Fire & Casualty Co.*, 194 Ill. App. 3d at 375.

A motion to strike an affirmative defense admits all well-pleaded facts constituting the defense, along with all reasonable inferences which may be drawn therefrom. (*Raprager v. Allstate Insurance Co.* (1989), 183 Ill. App. 3d 847, 854.) Such a motion raises only a question of law as to the sufficiency of the pleading. (*Raprager*, 183 Ill. App. 3d at 854.) Where the well-pleaded facts and inferences drawn therefrom raise the possibility that the party raising the defense will

prevail, the motion to strike should not be granted. *Long v. Kemper Life Insurance Co.* (1990), 196 Ill. App. 3d 216, 218; *Raprager*, 183 Ill. App. 3d at 854.

In her answer to the co-executors' petition to recover the proceeds of the IRA account, Carol admitted that the decedent established IRA No. 5013 on October 26, 1982, that she was designated at that time as its beneficiary, and that the decedent never filed any other beneficiary designations with the Lake Shore National Bank. She further answered that the terms of the judgment of dissolution of her marriage to the decedent entered on July 27, 1983, and the property settlement agreement incorporated therein speak for themselves, and, to the extent those terms were inconsistent with the co-executors' allegations that she specifically waived any rights to the property of the trust or any beneficial interest therein, she denied them. The property settlement agreement provided in pertinent part that the decedent receive as his "sole and exclusive property" the 77 shares of Victory Beauty Supply Company, Inc., stock in the Lake Shore National Bank IRA No. 5013 and that Carol waives any and all rights and claims "past, present or future" in and to said property. Carol also answered that the co-executors' allegation that section 1 of the Act revoked the designation of her as the beneficiary of the trust was an "erroneous legal conclusion" which she denied and that the terms of the trust agreement speak for themselves.

As her first affirmative defense, Carol claimed that even if section 1 of the Act applied to revoke the decedent's designation of her as beneficiary of the IRA account after the parties' divorce, such designation was "approbated and ratified anew" by the decedent subsequent to the divorce. As her second affirmative defense, Carol claimed that Lake Shore National Bank was merely a custodian for property or an appointed paying and receiving agent under the instrument creating the account or that the account is equivalent to a Totten trust. Under any of those circumstances, the account would be specifically excluded from the revocation provisions of section 1. Ill. Rev. Stat. 1989, ch. 148, pars. 301(c)(f), (c)(g).

Based on Carol's admission that decedent never filed any other beneficiary designation subsequent to the parties' divorce, the co-executors filed their motion for judgment on the pleadings and to strike affirmative defenses. Carol's response elaborated on her answer, and she appended to it numerous exhibits. Her response challenged the January 1, 1989, trust agreement relied upon by the co-executors as the controlling instrument in light of the affidavit of Gerald P. Giese, a trust officer of the bank, that decedent never executed a written

adoption agreement as to that 1989 amendment and that the only adoption agreement ever executed was the one dated October 26, 1982. Other exhibits appended to Carol's response included the judgment for dissolution, affidavits of herself and the parties' respective attorneys in the divorce proceedings; various account records of IRA No. 5013 (which, for the most part, this court finds illegible); copies of the decedent's last wills and testaments and codicils executed both before and after the parties' divorce; various trust instruments executed subsequent to February 1, 1984; and a letter dated July 25, 1986, from the decedent to the trustee of the IRA purporting to amend the October 26, 1982, adoption agreement by directing that the trustee not engage in any distribution or transfer of amounts held with respect to the IRA other than to decedent's checking account with the Lake Shore National Bank at his direction. The stated purpose of these other exhibits was to show that the decedent's intent was "to continue to provide for Carol by continuing to designate her as the beneficiary of the IRA."

After considering written memoranda of law and argument, the court granted the co-executors' motion for judgment on the pleadings and struck both of Carol's affirmative defenses. It also granted judgment in favor of the co-executors on their petition for recovery of the individual retirement account, declaring the estate of Michael Davis to be the beneficiary of the IRA trust account and that Carol had no right, title or interest in the trust.

Carol first argues that, even if section 1 of the Act was applicable to the IRA, it was error for the court to have entered judgment on the pleadings where material questions of fact were raised thereby and where the court was bound to accept as true that the decedent intended her at all times to be the beneficiary of the account as alleged in her pleadings and the exhibits appended thereto.

The first material question of fact Carol claims was raised is which of the two trust agreements controls: the 1989 amendment proffered by the co-executors or the original 1982 trust agreement? We agree with the co-executors, however, that this does not present a material question of fact. The trust agreement adopted by the decedent in 1982 provided in article IX, section 9.01, that he delegated to the trustee the power to amend the trust agreement in any respect (other than the decedent's own reserved power to change an election or designation in the adoption agreement) and that the "Participant" (decedent herein) would be deemed to have consented to such amendment unless he notified the trustee within 30 days that he wished to terminate his participation in the agreement. No facts were pleaded

which indicated that the decedent did not consent to the 1989 amendment. Clearly, the decedent's July 25, 1986, letter purporting to amend the 1982 adoption agreement does nothing to diminish the validity of the subsequent 1989 amendment since decedent's 1986 letter predated the amendment by $3\frac{1}{2}$ years. Moreover, both the 1982 and 1989 versions contain virtually identical language concerning the requirements for designation of beneficiary, to wit:

> "Each Participant shall designate in writing the Beneficiary to whom his Benefits will be distributed in the event of his death, and the Trustee may rely upon the last such written designation that the Trustee receives prior to the Participant's death. Any Benefits not disposed pursuant to a valid Beneficiary designation will be paid to Participant's surviving spouse, or if there is no spouse living at the time of the Participant's death, to the Participant's estate."

In light of that provision in both versions, and Carol's admission that the decedent never filed any beneficiary designations with Lake Shore National Bank other than the October 26, 1982, one, Carol's further argument that decedent's subjective intent to "approbate and ratify anew" his designation of her as beneficiary subsequent to their divorce also presented a material question of fact is without merit. The terms of the trust agreement are clear that a valid *written* designation of beneficiary is required and no new designation was filed subsequent to the parties' divorce in 1983. Moreover, contrary to Carol's assertions, the court need not have accepted as true the facts set forth in the various exhibits appended to her pleadings for purposes of deciding the motions. The exhibits upon which she relied to show the decedent's subjective intent were attached as examples of the evidence supporting her pleading and, as such, neither control nor need be taken as true by the court in determining the motions. *Jones v. Lazerson* (1990), 203 Ill. App. 3d 829, 836; *McCormick v. McCormick* (1983), 118 Ill. App. 3d 455, 460.

We conclude there were no genuine issues of material fact which precluded judgment on the pleadings. We must next consider whether the co-executors were entitled to judgment as a matter of law on the basis of the pleadings or whether the well-pleaded facts and inferences drawn from Carol's affirmative defenses raised the possibility that she would prevail.

As noted above, Carol's first affirmative defense was that the beneficiary designation under IRA No. 5013 was "approbated and ratified anew" by the decedent subsequent to the parties' divorce in 1983. Viewing the well-pleaded facts and inferences drawn therefrom

in Carol's favor, we see no possibility of her prevailing on this defense. Decedent designated Carol as beneficiary of the IRA upon its creation in October 1982 pursuant to a trust agreement. In July 1983, the parties were divorced, and by the terms of the parties' property settlement agreement, Carol specifically waived all past, present or future interest in 77 shares of Victory Beauty Supply Company stock "[i]n IRA account Lake Shore." It is not clear from the pleadings whether that stock constituted the entire *res* of IRA No. 5013 at that time. Nonetheless, neither the trust agreement nor the judgment of dissolution expressly provided that section 1 of the Act would *not* apply and that act was in effect at all relevant times herein. In pertinent part, it provided:

"Unless the governing instrument or the judgment of judicial termination of marriage expressly provides otherwise, judicial termination of the marriage of the settlor of a trust revokes every provision which is revocable by the settlor pertaining to the settlor's former spouse in a trust instrument or amendment thereto executed by the settlor before the entry of the judgment of judicial termination of the settlor's marriage, and any such trust shall be administered and construed as if the settlor's former spouse had died upon entry of the judgment of judicial termination of the settlor's marriage." Ill. Rev. Stat. 1989, ch. 148, par. 301(a).

Section 1 recently was discussed in *Leahy v. Schuett* (1991), 211 Ill. App. 3d 394, but was found inapplicable because the land trust there was specifically exempted from the operation of the Act (see Ill. Rev. Stat. 1989, ch. 148, par. 301(c)(a)) and, further, the land trust was created prior to the Act's effective date. No other reported Illinois cases have applied section 1.

By the plain language of the statute, unless the trust agreement as the "governing instrument" or the parties' property settlement agreement expressly provided that section 1 would *not* apply or unless the decedent redesignated Carol after their divorce in a *written* beneficiary designation subsequent to the divorce as required by the terms of the trust agreement, the decedent's predissolution designation of Carol as the beneficiary of IRA No. 5013 was revoked by operation of section 1 at the time his marriage to Carol was judicially terminated.

Both the 1989 amendment and the original 1982 trust agreement specifically recite that the agreement "shall be construed and interpreted in accordance with the laws of the State of Illinois," and the 1982 trust agreement was adopted almost 11 months after the effec-

tive date of section 1. The designation of Carol by the decedent as beneficiary of IRA No. 5013 was a "provision revocable by the [settlor] pertaining to the [settlor's] former spouse." "Provisions pertaining to the settlor's former spouse" as defined by the statute include, but are not limited to, "every present or future gift or interest or power of appointment given to the settlor's former spouse." Ill. Rev. Stat. 1989, ch. 148, par. 301(d).

Despite the revocation which occurred by operation of the Act, decedent could have redesignated Carol as beneficiary of IRA No. 5013 after their divorce. Decedent must be charged with the knowledge that the IRA trust agreement was to be construed in accord with Illinois law, and his failure after the Act's automatic revocation to redesignate Carol *in writing* as beneficiary of the IRA as required under the trust agreement must be viewed as an intent *not* to renew that beneficiary designation. (*Cf. Williams v. Gatling* (1989), 186 Ill. App. 3d 21 (where decedent had ample opportunity after his divorce to designate a beneficiary other than his ex-wife under his employee stock ownership plan but did not do so, court upheld designation of ex-wife as beneficiary under that plan despite the parties' mutual waiver of assets in divorce decree).) Thus, there was no "valid" beneficiary designation in effect under the trust agreement at the time of the decedent's death, and Carol's "subjective intent" affirmative defense could not possibly prevail in light of the trust agreement's clear requirement that the beneficiary designation be in writing.

Carol's second affirmative defense was that the IRA trust agreement was either (a) an "instrument under which a nominee, custodian for property or paying or receiving agent is appointed" or (b) a Totten trust and, thus, was exempt from the provisions of the Act (Ill. Rev. Stat. 1989, ch. 148, pars. (c)(f), (c)(g)).

It clearly was not the latter. A Totten trust or savings bank trust is created when a deposit is made by a person of his or her own money in his or her own name as trustee for another. (*In re Estate of Petralia* (1964), 48 Ill. App. 2d 122, 129 (referring to the court's decision in *In re Totten* (1904), 179 N.Y. 112, 125-26, 71 N.E. 748, 752), *aff'd* (1965), 32 Ill. 2d 134, 138; see also *In re Estate of Capocy* (1981), 102 Ill. App. 3d 609, 611-12.) IRA No. 5013 is not a savings account, nor is the decedent the trustee thereof.

It is not as clear, however, whether the instrument governing IRA No. 5013 falls within exception (f) to subsection (c) of section 1 as being one "under which a nominee, custodian for property or paying or receiving agent is appointed." (Ill. Rev. Stat. 1989, ch. 148, par. 301(c)(f).) Carol's argument is that, rather than creating a true trust

relationship, the instrument here created only an agency or custodial relationship. In support, she relies on these factors: Lake Shore National Bank had no discretion whatever with regard to the assets of IRA No. 5013 but could act only upon the specific written direction of the decedent; an agency relationship rather than a trust relationship may be found to exist in special circumstances even though title has passed; decedent had the power to revoke the agreement; and, finally, decedent agreed to indemnify Lake Shore National Bank against any liabilities in a hold-harmless clause in the agreement.

The co-executors respond that the IRA trust agreement shows it is a trust and not an agency of any kind because Lake Shore National Bank holds legal title to the trust property; arrangements in which the settlor retains far more control than even that reserved to the decedent here are routinely recognized as trusts; the decedent's death did not cause the trust to be terminated; and any liability of the decedent for Lake Shore National Bank arises only indirectly by virtue of their contractual arrangement whereby, in a common business practice, a trustee may shift the burden of certain liabilities by contractual arrangement to another party.

An individual retirement account, or IRA, is a trust (or custodial account) created or organized for the exclusive benefit of an individual or his or her beneficiaries. (26 U.S.C. §408(a) (1988); *First National Bank v. Estate of Philp* (1982), 106 Ill. App. 3d 360, 361; 60A Am. Jur. 2d *Pensions & Retirement Funds* §42, at 90 (1988); Black's Law Dictionary 774 (6th ed. 1990).) The IRA in *Philp*, a custodial account, was found to be a "special deposit," that is, a bailment to be returned intact on demand. Because it was not a "general" deposit, there was no debtor/creditor relationship between the bank and the depositor and the court found the bank had no right to set off the deceased depositor's funds against his debt to it on three promissory notes. *Philp*, 106 Ill. App. 3d at 362.

A "custody" or "custodial" account is a type of agency account in which the custodian has the obligation to preserve and safekeep the property entrusted to him for his principal. (Black's Law Dictionary 384 (6th ed. 1990).) Custodial accounts are treated as trusts for purposes of section 408 of the Internal Revenue Code of 1954 if the assets of the account are held and administered consistent with that section and if the custodial account would, except for the fact that it is not a trust, constitute an individual retirement account as described in subsection (a) of section 408. 26 U.S.C. §408(a) (1988); *McCarty v. State Bank* (1990), 14 Kan. App. 2d 552, 555-56, 795 P.2d 940, 944.

In contrast to the custodial account IRA in *Philp*, the IRA at bar was established as a trust under a trust agreement. In order to find there is a valid express trust, these conditions must be present: an intent to create a trust which may be shown by a declaration of trust by the settlor or circumstances which show the settlor intended to create a trust; a definite trust *res*; ascertainable beneficiaries; a trustee; specification of the purpose of the trust and how it is to be performed; and delivery of the trust property to the trustee. *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 92; see also *Yardley v. Yardley* (1985), 137 Ill. App. 3d 747, 760.

A custodial account IRA is not an express trust because there is no intent to establish a trust. (*Estate of Davis* (1985), 171 Cal. App. 3d 854, 857, 217 Cal. Rptr. 734, 736.) Here, however, there was an intent to establish a trust as evidenced by decedent's execution of the IRA retirement plan adoption agreement which incorporated the trust agreement. The trust *res* was the IRA; "ascertainable beneficiaries" were Carol Davis, or if that designation was not valid, decedent's surviving spouse or, if none, his estate; Lake Shore National Bank was appointed trustee and decedent's contributions to the IRA were delivered to the bank.

Carol argues the element of "the manner in which the trust to be performed" is missing, however, where the account was completely self-directed and Lake Shore National Bank had no discretion or control whatsoever with regard to the trust *res* but could act only when, how and if directed to do so in writing by the decedent. Pointing to control as the most essential element to a demonstration of the existence of an agency relationship, Carol concludes the decedent/Lake Shore National Bank relationship is one of principal/agent and not beneficiary/trustee.

The co-executors correctly argue, however, the control exercised by the decedent here was as settlor of the trust, not as a beneficiary. (See *Just Pants v. Bank of Ravenswood* (1985), 136 Ill. App. 3d 543, 547 (where beneficiaries retain control over the trustee and the management of the business, the trustee is regarded as the agent of the beneficiaries); see also *Kessler, Merci, & Lochner, Inc. v. Pioneer Bank & Trust Co.* (1981), 101 Ill. App. 3d 502, 505-06.) Moreover, it has been held that where the settlor has reserved a power in himself to the effect that the trustee should not exercise any of its powers granted in the trust agreement without the prior written consent of the settlor, such power is not of such a substantial nature as to amount to a retention of virtual ownership in the settlor and the attendant relegation of the trustee to the role of mere agent of the

settlor. (*Merchants National Bank v. Weinold* (1956), 12 Ill. App. 2d 209, 220-24.) The rationale underlying that conclusion is that such a reserved power only permits the settlor to direct the trustee according to the terms of the trust instrument and not according to the settlor's unlimited whims or desires. *Merchants National Bank*, 12 Ill. App. 2d at 223.

Carol essentially concedes that legal title to the trust *res* passed to the trustee here but asserts nonetheless that an agency relationship may be found to exist even though title has passed. Carol does not explain the relevance to the instant cause of the cases she cites in support of that proposition, and we do not find them apposite. *In re Estate of Reiter* (1939), 298 Ill. App. 313 (agent may take title under special contract but in absence of such contract does not); *O'Connor v. Burns, Potter & Co.* (1949), 151 Neb. 9, 29, 36 N.W.2d 507, 519 (securities taken in name of one of defendant corporation's managing officers were taken solely for the purpose of placing them in street form by his endorsement and not to vest legal title in him).

Carol further argues that another distinction between a trust and an agency is that a trust ordinarily is terminated only by the fulfillment of its purpose, whereas an agency can be revoked at any time, and the fact the decedent reserved the power to terminate or revoke the trust is not indicative of the existence of a trust. (*Merchants National Bank v. Frazier* (1946), 329 Ill. App. 191, 201.) Without a reserved power to terminate, however, the settlor of a trust has no power to revoke the trust which normally will terminate as provided in the trust instrument or when the settlor's purpose in establishing the trust has been accomplished. (G. Bogert, Law of Trusts §148, at 531; §149, at 536 (5th ed. 1973).) Decedent's reserved power to terminate the trust here is particularly consistent with the existence of an *inter vivos* trust which is effective during the lifetime of the settlor as contrasted with a testamentary trust which takes effect at the death of the settlor or testator.

Finally, Carol points to the clause in the trust agreement wherein the decedent agreed to "indemnify, hold harmless and defend the Trustee from and against any liabilities incurred by reason of any action taken by the Trustee in good faith pursuant to the provisions of this agreement." She presents no argument or authority, however, with regard to this point thus waiving it. (134 Ill. 2d R. 341(e)(7).) We infer that she considers this a point which favors a finding of agency rather than trust, but we need not consider it under the circumstances.

In sum, we find as a matter of law that IRA No. 5013 is an *inter vivos* trust which does not fall within exception (c)(f) or (c)(g) of section 1 of the Act. Accordingly, Carol's second affirmative defense failed to raise the possibility that she would prevail, and the court did not err in striking it.

For the reason above, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and NICKELS, JJ., concur.