# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

## *Herbert v. Cunningham*, 2018 IL App (1st) 172135

</div>

| | |
|---|---|
| Appellate Court Caption | ISOBEL A. HEBERT, Executor of the Estate of P. Kevin Cunningham, Deceased, Plaintiff-Appellee, v. BETTY CUNNINGHAM, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-2135 |
| Filed | December 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-P-3107; the Hon. Pamela M. Meyerson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Morrone & Morrone, P.C., of Palos Heights (Michelle M. Morrone, of counsel), for appellant.<br><br>Kelly, Olson, Michod, DeHaan & Richter, L.L.C., of Chicago (David S. Adduce and Marc J. Chalfen, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Presiding Justice Delort and Justice Connors concurred in the judgment, with opinion. |

¶ 1       Isobel A. Hebert (executor), as executor of the estate of P. Kevin Cunningham (the decedent), filed a complaint in the circuit court of Cook County against defendant-appellant Betty Cunningham (Betty), seeking a declaratory judgment regarding funds from the decedent's 401(k) retirement account. Following cross-motions for summary judgment, the trial court entered judgment in favor of the executor and against Betty. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                              BACKGROUND

¶ 3       The decedent and Betty were married in 1981. During and after the marriage, the decedent was employed by Loparex LLC (Loparex). The decedent participated in the Loparex 401(k) Plan and had an account under that plan (the 401(k) account). On a "Designation of Beneficiary Form," executed in November 1998, the decedent indicated that he was married to Betty and named her as the primary beneficiary to the 401(k) account. Fidelity Management Trust Company (FMTC) was the designated trustee of the 401(k) plan.

¶ 4       In November 2003, the decedent and Betty's marriage was dissolved, pursuant to a judgment for dissolution of marriage entered by the circuit court of Cook County. That judgment (the divorce decree) incorporated a marital settlement agreement, dated November 12, 2003 and signed by the decedent and Betty. The divorce decree recites that Betty was represented by an attorney, but that the decedent had "chosen to represent himself" in the divorce.

¶ 5       Paragraph 5 of the divorce decree provided:

     "The parties agree that they have interests in several different retirement assets. The parties agree that each party shall retain sole ownership of their separate retirement assets, free and clear from any claim by the other party, as follows: The Wife [Betty] shall retain sole ownership of her IRA at Invesco and her 401(k) account ***. The Husband [the decedent] shall retain sole ownership of his IRA at Invesco and his 401(k) account at Fidelity. Each party warrants and represents that neither he nor she has any other interest in any other pension, IRA, 401(k) ESOP, or other retirement plan, except as may be specified above."

¶ 6       The divorce decree subsequently stated that:

     "Except as otherwise provided herein, each of the parties hereto does hereby forever relinquish, release, waive, and quitclaim to the other party hereto all property rights and claims which he or she now has or may hereafter have, as husband, wife, widow, widower or otherwise, or by reason of the marital relations now existing between the parties hereto or by virtue of any present or future law of any state or of the United States of America or any other country, in or to or against the property of the other party or his or her estate, whether now owned or hereafter acquired by such other party. Each of the parties hereto further covenants and agrees for himself and herself and his or her heirs, executors, administrators and assigns, that he or she will never at any time hereafter sue the other party or his or her heirs, executors, administrators and assigns, for the purpose of enforcing any of the rights relinquished under this paragraph."

¶ 7    The decedent died in March 2014. The decedent never executed a document changing the designation of Betty as the beneficiary to the 401(k) account.

¶ 8    At the time of his death, the decedent had a "Last Will and Testament" dated December 1, 2013 (the will). In July 2014, the probate division of the circuit court of Cook County admitted the will to probate and appointed the executor.

¶ 9    In August 2014, the executor informed Fidelity Brokerage Service LLC that the 401(k) account should pass to the decedent's estate (the estate), rather than to Betty. Loparex, as the 401(k) plan administrator, and FMTC, as trustee for the 401(k) account, determined that the estate was the proper beneficiary of the 401(k) account and caused the transfer of the 401(k) funds to a separate account for the benefit of the estate.

¶ 10    On October 16, 2014, Betty filed a complaint for declaratory judgment as a supplemental proceeding in the decedent's probate case, alleging that she was the rightful beneficiary and was entitled to receive the funds from the 401(k) account. Loparex, as plan administrator, subsequently removed Betty's declaratory judgment action to the United States District Court for the Northern District of Illinois (the federal court). Loparex also filed an interpleader counterclaim in the federal court with respect to the 401(k) account. The executor filed an answer and counterclaim in the interpleader action, alleging that the estate was the proper beneficiary of the 401(k) plan under the federal Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (2012)). In addition, the executor also asserted state law claims against Betty, alleging breach of the divorce decree and seeking the imposition of a constructive trust for the benefit of the estate. The funds from the 401(k) account were deposited with the clerk of the federal court, subject to further order of that court.

¶ 11    The executor and Betty filed cross-motions for summary judgment in the federal action. The executor argued that, under ERISA, the divorce decree constituted a "qualified domestic relations order" (QDRO),[1] such that the estate, rather than Betty, was the proper beneficiary of the proceeds of the 401(k) account. Alternatively, the executor argued that, even if the divorce decree was not a QDRO under ERISA, Betty could only receive the funds in the 401(k) account as a constructive trustee for the benefit of the estate. Betty's cross-motion argued that the divorce decree did not satisfy the requirements of a QDRO under ERISA, such that she remained the proper beneficiary of the 401(k) account, and that there was no basis to impose a constructive trust in favor of the estate.

¶ 12    On November 1, 2016, the federal court entered an order in which it agreed that Betty was the rightful beneficiary under ERISA, but specifically declined to address the executor's claim for relief under state law. *Cunningham v. Hebert*, No. 14 C 9292, 2016 WL 6442180 (N.D. Ill. Nov. 1, 2016). The first portion of the federal court's order discussed "Who the Rightful Beneficiary of the 401(k) Plan is Under ERISA." The federal court recognized that under ERISA, benefits may only be assigned or alienated through a QDRO, and that, "[t]o qualify as a QDRO, a divorce decree must *** 'create[ ] or recognize[ ] the existence of an alternate

---

[1]Under section 1056(d) of the ERISA statute, benefits under a pension plan may not be assigned or alienated by a domestic relations order unless "the order is determined to be a qualified domestic relations order." 29 U.S.C. § 1056(d)(1), (3)(A) (2012). Section 1056(d)(3) sets forth the requirements for "qualified domestic relations order," including that it must "create[ ] or recognize the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I) (2012).

payee's right to *** receive all or a portion of the benefits payable" under a plan. *Id.* at *3 (quoting 29 U.S.C. § 1056(d)(1), (d)(3)(B)(i)(I) (2012)).

¶ 13    The federal court rejected the executor's contention that the decedent could qualify as an "alternate payee," finding that the decedent was not within the statutory definition of that term. See 29 U.S.C. § 1056(d)(3)(k) (2012) (defining "alternate payee" to mean "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant"). Because the divorce decree did not designate an "alternate payee," the federal court concluded that it did not constitute a QDRO for purposes of the ERISA statute.

¶ 14    In turn, the federal court concluded that the decedent's original designation, naming Betty as the beneficiary of the 401(k) account, was unaffected by the divorce decree. The federal court also cited the United States Supreme Court's holding in *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009), for the proposition that a waiver contained in a non-QDRO divorce decree should be disregarded, if it conflicts with the beneficiary designation set forth in ERISA plan documents. The federal court noted that "here, as in *Kennedy*, the divorce decree is inconsistent" with the form designating Betty as the beneficiary of the 401(k). *Cunningham*, 2016 WL 6442180, at *4. In turn, the federal court ruled that, under ERISA, "the funds from the 401(k) account should have been distributed to Betty." *Id.* at *5.

¶ 15    Significant for purposes of this appeal, the federal court proceeded to note the executor's alternative contention that, even if Betty was the proper beneficiary under ERISA, she "may only hold the proceeds as constructive trustee for the benefit of the estate because claiming the 401(k) fund is a violation of the divorce decree." *Id.* at *4. The federal court noted that the United States Supreme Court's decision in *Kennedy* "left open the question whether a common law waiver has any effect on what should happen after the funds are distributed to the designated beneficiary." *Id.* The federal court recognized that the issue had since been "resolved in this circuit by *N.L.R.B. v. HH3 Trucking, Inc.*, 755 F.3d 468, 470-71 (7th Cir. 2014), holding that plan benefits, once paid to the beneficiary, are subject to legal process such as attachment or garnishment." *Id.*

¶ 16    The federal court proceeded to conclude that it would be more appropriate for the circuit court of Cook County to determine whether, as a matter of state law, Betty was entitled to retain the funds: "Although this court may assume supplemental jurisdiction of the Executor's request for imposition of a constructive trust, whether Betty has violated a decree entered in the Circuit Court of Cook County and if so what the consequence should be is not something this court should decide." *Id.* at *5. Therefore, having decided the federal ERISA question, the federal court dismissed the executor's claim for breach of the divorce decree "without prejudice to refiling in the Circuit Court of Cook County." *Id.*

¶ 17    As suggested by the federal court's order, on November 15, 2016, the executor filed a "Complaint in Supplemental Proceedings for Declaratory Judgment and Other Relief" in the circuit court of Cook County (circuit court). The complaint contained two counts: a count for declaratory judgment (count I) and a count for breach of the divorce decree (count II). Both counts were premised on allegations that, under the divorce decree, Betty's beneficial interest in the 401(k) account was "assigned, relinquished, waived, released, quitclaimed and/or disclaimed" to the decedent's estate, that the estate "retained sole ownership, property rights

and interest in the 401(k) Funds," and that Betty was "estopped from claiming any beneficial interest in the 401(k) funds."

¶ 18 Count I alleged that, to prevent Betty's unjust enrichment, she could "only act as constructive trustee" for the benefit of the estate. Count I thus sought an order "declaring and imposing a constructive trust on the 401(k) funds" and ordering Betty to transfer the funds to the estate. Count II pleaded that any transfer of the 401(k) funds to Betty, or her use of the funds, would constitute a breach of the divorce decree. Count II sought a judgment against Betty "in the amount of the 401(k) funds" and, like count I, also sought an order declaring a constructive trust, and directing Betty to turn over the 401(k) funds to the estate.

¶ 19 On January 19, 2017, the circuit court entered an order prohibiting disbursement of the 401(k) funds pending its determination of the parties' rights. On January 31, 2017, the parties filed a joint and stipulated statement of undisputed material facts and documents. The executor and Betty subsequently filed cross-motions for summary judgment.

¶ 20 The executor's motion for summary judgment argued that the decedent's and Betty's "intentions as to their respective retirement assets are unequivocal and self-evident in the Divorce Decree." The executor asserted that the divorce decree was a binding contract, in which Betty "relinquished, released and waived" any interest in the 401(k) account. Alternatively, the executor argued that entry of the divorce decree "automatically revoked" Betty's status as the beneficiary of the 401(k) account, by operation of the Trusts and Dissolutions of Marriage Act (Act).[2] 760 ILCS 35/1 (West 2016). Thus, the executor argued that Betty could not retain the 401(k) funds "other than [as] constructive trustee for the benefit of the Estate."

¶ 21 Betty's motion for summary judgment first argued that count I of the executor's complaint was barred by the doctrine of *res judicata* because the federal court had already "ruled that Betty *** was entitled to the 401(k) proceeds." Betty additionally urged that summary judgment in her favor was mandated by ERISA and the United States Supreme Court's decision in *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) (holding that ERISA preempted a Washington statute providing that a divorce automatically revoked a prior designation of a spouse as the beneficiary). Betty asserted that, under *Egelhoff*, she was entitled to summary judgment because she was the last named beneficiary to the 401(k) account.

¶ 22 With respect to count II of the executor's complaint, Betty's motion argued that the divorce decree could not waive her interest in the 401(k) plan under ERISA, citing *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009). Betty otherwise argued that the language of the divorce decree was insufficient to waive her interest in the 401(k), as the divorce decree contained only "generic waivers," but neither she nor the decedent "specifically waive[d] their interest in specific assets or agree[d] to terminate their interests as a beneficiary." Betty's motion otherwise claimed that it was evident that the

---

[2]The Act provides, in relevant part: "Unless the governing instrument or the judgment of judicial termination of marriage expressly provides otherwise, judicial termination of the marriage of the settlor of a trust revokes every provision which is revocable by the settlor pertaining to the settlor's former spouse in a trust instrument or amendment thereto executed by the settlor before the entry of the judgment of judicial termination of the settlor's marriage, and any such trust shall be administered and construed as if the settlor's former spouse had died upon entry of the judgment of judicial termination of the settlor's marriage." 760 ILCS 35/1(a) (West 2016).

decedent intended for Betty "to remain as the rightful beneficiary," because he did not change the beneficiary designation for the 401(k) after the divorce. Betty and the executor subsequently filed responses to each other's cross-motions for summary judgment, as well as reply briefs.

¶ 23    On July 25, 2017, the circuit court entered an order in which it granted the executor's motion for summary judgment and denied Betty's motion. The court first rejected Betty's claim that *res judicata* barred count I of the executor's complaint. The circuit court recognized that the federal court had decided only "the ERISA issue," but that the federal court "specifically declined to assume supplemental jurisdiction over the state claims, including the Executor's counterclaim for a declaratory judgment." Thus, the circuit court found there had been "no final judgment on the merits of the declaratory action," and so *res judicata* did not apply.

¶ 24    Next, the circuit court agreed with the executor's contention that the Act automatically revoked Betty's beneficial interest. The court found that the "401(k) plan documents *** make clear that the 401(k) in this case is a trust" that was governed by the Act. The court concluded that, under section 1 of the Act (760 ILCS 35/1 (West 2016)) Betty's interest in the 401(k) "was automatically extinguished upon entry of the Divorce Decree."

¶ 25    As an independent basis for ruling in favor of the executor, the circuit court additionally found that, "even if Betty's interest had not been automatically extinguished under the Act, her interest was extinguished by the clear and specific terms of the Divorce Decree." The court reasoned:

> "The Divorce Decree clearly expressed Betty's intent to waive any interest in the Loparex 401(k). Both Betty and [the decedent] held separate retirement accounts during their marriage. The Divorce Decree specifically listed each account and provided that each party would keep his or her own accounts. As part of this provision, the Divorce Decree listed [the decedent's] interest in 'his 401(k) account at Fidelity,' specifically provided that [the decedent] shall 'retain sole ownership' of his separate retirement assets 'free and clear of any claim' by Betty, and contained waiver and release language. Therefore, Betty's interest in the Loparex 401(k) was extinguished upon entry of the Divorce Decree."

¶ 26    On these grounds, the circuit court found that "Betty's interest in the Loparex 401(k) was extinguished," imposed a constructive trust on the 401(k) funds, and ordered Betty to turn the funds over to the executor. The circuit court specified that this determination was a final and appealable order.

¶ 27    On August 23, 2017, Betty filed a timely notice of appeal. Accordingly, we have jurisdiction. Ill. S. Ct. R. 303(a) (eff. July 1, 2017).

¶ 28                                    ANALYSIS

¶ 29    On appeal, Betty asserts three lines of argument challenging the circuit court's grant of summary judgment to the executor. First, she contends that count 1 of the executor's complaint was barred by operation of *res judicata*. Second, she claims that the court erred in finding that the Act operated to extinguish her interest in the 401(k) account. Third, she disputes the circuit court's independent conclusion that her interest in the 401(k) account was waived or otherwise extinguished by the terms of the divorce decree.

¶ 30 We first reject Betty's claim that *res judicata* barred the executor's request for a declaratory judgment in count 1. Betty explicitly limits her *res judicata* argument to count I; she does not suggest that count II was barred, as she recognizes that the federal court's order specified that the executor could assert a claim for breach of the divorce decree in state court. Betty states that *res judicata* applies to count I because "the claims asserted in the previous declaratory judgment action [in federal court] and the current Declaratory Judgment Action arise from a single group of operative facts." She urges that, since the federal court "denied [the executor's] request for declaratory relief," the executor could not make a similar claim for declaratory relief in the circuit court.

¶ 31 " 'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent action between the same parties or their privies on the same cause of action.' [Citation.] *Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided. [Citation.] Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. [Citation.]" *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 32 Illinois courts have held that, when a federal court declines to exercise supplemental jurisdiction over state-law claims, *res judicata* will *not* apply to bar subsequent litigation of a state-law claim in state court. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 393-94 (2001) ("[b]y declining jurisdiction over the plaintiff's pendent state claim *** the district court in effect reserved plaintiff's right to pursue the matter in state court"); *Schandelmeier-Bartels v. Chicago Park District*, 2015 IL App (1st) 133356, ¶¶ 28-31 (federal court's decision not to exercise supplemental jurisdiction over state-law claim did not implicate *res judicata*).

¶ 33 In this case, the federal court decided a single issue of federal law to conclude that, under ERISA, Betty was entitled to distribution of the 401(k) account by the plan administrator. However, the federal court expressly declined to decide the executor's claim that, as a matter of state law, it was unjust for Betty to retain the 401(k) funds *after* their initial distribution. Indeed, the federal court expressly indicated that the executor could refile an action in the circuit court of Cook County to pursue the 401(k) funds under state law. Accordingly, we do not find that the federal court's order was a "final judgment on the merits" that could support application of *res judicata*.[3]

¶ 34 Having rejected her *res judicata* argument, we turn to address Betty's challenges to the circuit court's independent conclusions that (1) pursuant to the Act, her interest in the 401(k) was extinguished upon her divorce and (2) in any event, Betty waived her interest in the 401(k) under the explicit terms of the divorce decree. Significantly, the circuit court indicated that these were independent, alternative grounds for granting summary judgment to the executor. At oral argument, Betty's counsel conceded that, regardless of the propriety of the trial court's holding regarding the Act, we may affirm the trial court, if we agree that the divorce decree constituted an explicit waiver of her interest in the 401(k) account.

---

[3]Moreover, we note that both counts of the executor's complaint requested the same relief, including imposition of a constructive trust and an order directing Betty to turn over the 401(k) funds to the decedent's estate. Thus, even if we were to agree with Betty that count I was somehow barred by *res judicata*, it would not preclude the trial court from granting the same relief under count II.

¶ 35    With respect to the trial court's holding regarding the Act, Betty's sole argument in her opening appellate brief is that "ERISA supercedes and pre-empts" the Act, relying on *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001). The executor's brief responds that (1) Betty has "waived" her Act argument and (2) in any event, the trial court properly held that the Act operated to extinguish her interest in the 401(k). The executor contends that Illinois courts have previously applied the Act to retirement accounts, relying primarily upon *In re Estate of Davis*, 225 Ill. App. 3d 998 (1992). That decision held that a decedent's predissolution designation of his wife as the beneficiary of his individual retirement account (IRA) was revoked pursuant to the Act upon the judicial termination of the marriage. *Id.* at 1004. *Davis* further held that, as the decedent "must be charged with the knowledge that the IRA trust agreement was to be construed in accord with Illinois law," his failure to redesignate his former spouse as beneficiary after the divorce "must be viewed as an intent *not* to renew that beneficiary designation." (Emphasis in original.) *Id.* at 1005. In her reply brief and at oral argument, Betty disputed the applicability of the holding in *Davis* regarding an IRA, to the 401(k) account at issue in this case.

¶ 36    However, we determine that we need not decide the applicability of the Act to resolve this appeal. First, we note that Betty did not raise her preemption argument in the circuit court. Although the executor's motion cited the Act as a basis for granting summary judgment in its favor, Betty's responding arguments in the circuit court never claimed that the Act was preempted by ERISA. Rather, her circuit court responses only argued that the Act did not apply because the "401(k) proceeds were not held in trust."

¶ 37    "Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal. [Citation.]" *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. "This court may deem any arguments not raised in the trial court as waived or forfeit[ed] on appeal." *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 59. We conclude that Betty's preemption argument regarding the Act is forfeited.[4]

¶ 38    Further, we need not decide whether the Act applies to the 401(k) account at issue in this case. This is because the circuit court additionally determined that—wholly apart from operation of the Act—the terms of the divorce decree waived Betty's interest in the 401(k). As set forth below, we agree with the circuit court's conclusion on that issue, which independently supports its judgment in favor of the executor.

¶ 39    In challenging the circuit court's conclusion that her interest in the 401(k) account was extinguished by the waiver language of the divorce decree, Betty first suggests that the issue is governed by the United States Supreme Court's decision in *Kennedy*, 555 U.S. 285. Betty also cites three decisions from our court, each of which is at least 27 years old, to argue that the divorce decree did not extinguish her interest in the 401(k). See *Leahy v. Leahy Schuett*, 211 Ill. App. 3d 394 (1991); *Williams v. Gatling*, 186 Ill. App. 3d 21 (1989); *O'Toole v. Central Laborers' Pension & Welfare Funds*, 12 Ill. App. 3d 995 (1973). Betty otherwise claims "there is no provision in the [divorce decree] that terminates [her] beneficial interest in any of decedent's assets." Betty recognizes that "[a]n expectancy interest may be terminated by a divorce decree" if there is a "clear expression of the spouse's surrender of that interest," yet

---

[4]In light of our conclusion that Betty's preemption argument is forfeited, we need not reach the executor's contentions that the preemption argument is otherwise barred by the doctrines of law of the case and collateral estoppel.

she claims that, in this case, she "did not waive or surrender her interest in the 401k proceeds." For the following reasons, we reject her arguments and find that the divorce decree's *explicit* waiver terminated her interest in the decedent's 401(k) account.

¶ 40 First, we find that Betty's reliance on *Kennedy* is misplaced. *Kennedy* held that, to comply with ERISA, a plan administrator must abide by the plan documents and *distribute* pension benefits to the former spouse who is named as the decedent's beneficiary, even when the former spouse "purported to waive her entitlement by a federal common law waiver embodied in a divorce decree that was not a QDRO." *Kennedy*, 555 U.S. at 288. In that case, the United States Supreme Court held that the "plan administrator did its statutory ERISA duty by paying the benefits to [decedent's former spouse] in conformity with the plan documents," notwithstanding the divorce decree. *Id.* at 299-300.

¶ 41 However, *Kennedy* expressly did not determine whether a named beneficiary is necessarily entitled to retain the proceeds *after* their initial distribution by an ERISA plan administrator, or if another party may still assert a claim to the proceeds on other grounds. Indeed, in a footnote, the United States Supreme Court declined to "express any view as to whether the Estate could have brought an action in state or federal court against [decedent's former spouse] to obtain the benefits after they were distributed." *Id.* at 299 n.10. Similarly, in this case, the federal court's order recognized that "*Kennedy* left open the question whether a common law waiver has any effect on what should happen after the funds are distributed to the designated beneficiary." *Cunningham*, 2016 WL 6442180, at *4.

¶ 42 Accordingly, in this case, the federal court applied *Kennedy* when it determined that Betty was the rightful beneficiary pursuant to ERISA. However, also consistent with *Kennedy*, the federal court declined to address whether Betty was entitled to *retain* the 401(k) funds pursuant to the divorce decree and explicitly permitted the executor to pursue its state law claims in the circuit court of Cook County. Thus, *Kennedy* did not preclude the executor from claiming a breach of the divorce decree to seek recovery of the 401(k) funds for the estate.

¶ 43 Having rejected Betty's reliance on *Kennedy*, we turn to her contention that the divorce decree did not contain a "clear expression" of her intent to waive any interest in the 401(k) account. This issue is essentially one of contractual interpretation.

> "It is well settled that the rules of contract construction are applicable to the interpretation of a marital settlement agreement and that a court's primary objective is to give effect to the intent of the parties. [Citation.] Where the language of the agreement is clear and its meaning is unambiguous, intent must be determined solely from the agreement's language and courts must give that language such effect. [Citation.]" *In re Marriage of Farrell*, 2017 IL App (1st) 170611, ¶ 12.

"This court reviews a circuit court's interpretation of a marital settlement agreement *de novo*." *Id.*

¶ 44 Our court has articulated a two-part inquiry to assess the enforceability of a divorce decree provision that purports to waive an expectancy interest in an asset:

> "[A] dissolution agreement may extinguish a divorced spouse's expectancy interest *** if the agreement includes a clear expression of the spouse's waiver of that interest. [Citations.] To determine the effect of a waiver, two factors must be considered: (1) whether the asset in dispute was specifically listed as a marital asset and awarded to a spouse; and (2) whether the waiver provision contained in the settlement agreement

specifically states that the parties are waiving any expectancy or beneficial interest in that asset. [Citations.] This court's review of the interpretation of a waiver provision included in a contractual agreement is *de novo*." *In re Marriage of Velasquez*, 295 Ill. App. 3d 350, 353 (1998).

¶ 45 Although the assets at issue in *Velasquez* (a land trust and insurance proceeds) were different in nature from the 401(k) account in this case, we find that that two-factor inquiry outlined in that decision is applicable. The first part of that inquiry is clearly satisfied here, as the 401(k) account was explicitly awarded to the decedent. The divorce decree specified that "each party shall retain sole ownership of their separate retirement assets free and clear from any claim by the other party," including that decedent "shall retain sole ownership of his *** 401(k) account at Fidelity."

¶ 46 We next consider the second part of the inquiry—whether the divorce decree "specifically states that the parties are waiving any expectancy or beneficial interest" in the disputed asset. *Id.* We recognize that the waiver language in the divorce decree does not contain the exact terms "expectancy" or "beneficial." Nevertheless, as our primary concern is to discern the parties' intent, we find that the divorce decree's waiver provision is unambiguously broad and prospective, encompassing all future as well as present property rights:

> "[E]ach of the parties hereto does hereby forever relinquish, release, waive, and quitclaim to the other party *all property rights and claims which he or she now has or may hereafter have* *** in or to or against the property of the other party or his or her estate, whether now owned or hereafter acquired by such other party." (Emphasis added.)

¶ 47 Notably, we enforced similarly broad waiver language in *Robson v. Electrical Contractors Ass'n Local 134 IBEW Joint Pension Trust*, 312 Ill. App. 3d 374 (1999), a dispute regarding a decedent's pension trust for which the decedent's ex-wife (Nancy) was named the beneficiary during the marriage. *Id.* at 376. Upon the divorce, Nancy's counsel prepared a marital dissolution judgment, stating that the marital portion of the pension would be divided equally between the former spouses. *Id.* The dissolution judgment included a provision that specified:

> " 'Each of the parties' rights and claims with regard to dower, homestead and all other property rights and claims which they may have or hereafter have, as husband, wife, widower, widow, or otherwise, by reason of the marital relationship *** in and to, or against the property of the other or his or her estate, whether now owned or hereafter acquired by such other party is hereby terminated.' " *Id.* at 377.

The dissolution judgment further called for entry of a "Qualified Domestic Relations Order (QDRO)" that "establishe[d] Nancy's one-half interest in the marital portion" of the pension. *Id.* Following the decedent's death, Nancy filed a complaint, seeking a declaration that she was the owner of all the pension benefits. *Id.* at 378. The trial court granted summary judgment in Nancy's favor, finding that the dissolution judgment and QDRO "had not effectuated 'a sufficiently clear surrender of' " decedent's death benefits. *Id.* at 379.

¶ 48 On appeal, our court reversed, finding that Nancy was "not entitled to any survivorship rights in the 50% of [decedent]'s pension benefits held in trust for him." *Id.* at 381. We noted that the dissolution judgment specified an equal division of the marital portion of the pension, such that the decedent became the owner of 50% of the pension trust benefits. *Id.* at 382. We also stated that: "in straightforward, express terms, the dissolution judgment terminated 'all property rights and claims which [decedent and Nancy] may have or hereafter have *** in or

to or against the property of the other or his or her estate.' " *Id.* (noting that the "waiver provision, although not specifically mentioning the pension trust, does specifically reference the *property* owned by each party" (emphasis in original)). After further noting that the terms should be "construed most strictly against the wife" because they were drafted by her counsel, we concluded that there was "a specific termination of Nancy's rights and claims, survivorship or otherwise, in the remaining one-half portion of [decedent's] pension trust." *Id.* at 382-83.

¶ 49    In her reply brief and at oral argument, Betty noted factual differences between *Robson* and the instant case, namely: (1) a QDRO was entered in *Robson*, whereas the federal court in this case determined that the divorce decree was *not* a QDRO, and (2) the disputed asset at issue in *Robson* was not a 401(k) account. However, we conclude that those factual distinctions do not bear upon the relevant issues of the construction and enforceability of the waiver provision. In that regard, we find *Robson* to be instructive.[5]

¶ 50    Similar to *Robson*, the divorce decree in this case stated, in clear and unequivocal terms, that Betty and the decedent "forever relinquish[ed], release[d], waive[d], and quitclaim[ed] *** all property rights and claims which he or she now has or may hereafter have *** in or to or against the property of the other party or his or her estate, whether now owned or hereafter acquired by such other party." We find that this broad waiver language unequivocally encompassed *all* property rights of any nature, including the beneficial property interest in the 401(k) at issue in this case. Indeed, it is hard to imagine how the waiver could have been worded more broadly.

¶ 51    At oral argument, Betty's counsel was asked to explain her position that the divorce decree's language was insufficiently specific to waive the property interest at issue in this case. That is, counsel was asked to articulate what other wording could have been included to encompass the beneficial interest in the 401(k) account at issue. Betty's counsel suggested that the divorce decree should have additionally specified that the former spouses waived their "beneficial interests" in each other's property, had they intended to waive such property rights.

¶ 52    We reject Betty's suggestion that more specific language was necessary in order for the divorce decree's waiver to apply to her interest in the 401(k) account. Such language would be superfluous, given the undeniably broad waiver language already contained in the divorce decree. The divorce decree waived "*all property rights and claims* which [Betty and the decedent] now ha[ve] *or may hereafter have*." (Emphases added.) These terms are indisputably broad on their face, and we are bound to accord them their plain meaning. The use of the term "all," especially combined with the prospective phrase "may hereafter have," undoubtedly encompasses all types of property rights that may come into existence; this necessarily includes beneficial or expectancy property interests.

¶ 53    In light of this overwhelmingly broad language, we reject Betty's suggestion that the divorce decree was insufficiently specific to waive beneficial interests. Rather, we find that the divorce decree unambiguously expressed the parties' intent to waive *all* present and future

---

[5]The three additional decisions cited by Betty to dispute the efficacy of the divorce decree waiver predate both *Velasquez* and *Robson*, and we find them to be non-controlling. See *Williams v. Gatling*, 186 Ill. App. 3d 21 (1989); *Leahy v. Leahy-Schuett*, 211 Ill. App. 3d 394 (1991); *O'Toole v. Central Laborers' Pension & Welfare Funds*, 12 Ill. App. 3d 995 (1973).

interests in each others' property, including Betty's interest in the decedent's 401(k) account.[6] Moreover, this conclusion is entirely consistent with the divorce decree's earlier statements that the decedent and Betty "shall retain sole ownership of their separate retirement assets, free and clear from any claim by the other party" and that the decedent "shall retain sole ownership" of the 401(k) account.

¶ 54 Based on the clear and explicit waiver language of the divorce decree, we agree with the trial court that it terminated Betty's interest in the 401(k) account proceeds, independent of ERISA or the Act. Upon that sole contractual basis, we affirm the judgment of the circuit court of Cook County. We reiterate that our holding is narrow and limited, as discussed. We need not, and we do not, decide the additional questions regarding application of the Act and ERISA that were briefed and argued. We simply hold that, under the explicit language of the divorce decree, Betty waived her interest in the 401(k) account. On this basis, we agree with the trial court that the executor was entitled to summary judgment and that Betty's cross-motion was properly denied. For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 55 Affirmed.

---

[6]Although we find that the waiver is explicit on its face, we also note that, similar to *Robson*, the divorce decree in this case reflects that it was drafted by Betty's counsel, whereas the decedent was unrepresented. Thus, its terms are construed strictly against Betty. *Robson*, 312 Ill. App. 3d at 382-83 ("when a dissolution judgment is drafted by the wife's counsel and the husband is unrepresented, as here, the terms of the dissolution judgment are to be construed most strictly against the wife").