NOTICE
Decision filed 05/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231270-U

NO. 5-23-1270

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| KIMBERLY A. TOBERMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 23-OP-262 |
| | ) | |
| MARKES N. RODGERS, | ) | Honorable |
| | ) | Bryan M. Kibler, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice McHaney and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's granting the petitioner a plenary order of protection against the respondent was not against the manifest weight of the evidence where the court properly considered the nature, frequency, severity, pattern, and consequences of the respondent's history of abuse and its findings were not arbitrary or unreasonable. The respondent also fails to show any evidence of the court's alleged bias against him. Therefore, the judgment of the circuit court is affirmed.

¶ 2    This matter arises out from a petition for order of protection filed by petitioner-appellee Kimberly Toberman against respondent-appellant Markes Rodgers. The Christian County circuit court granted the petition, and Rodgers now appeals from the court's entry of a plenary order of protection. He argues that Toberman filed her petition in preemptive retaliation for any future attempt by him to change their parenting plan, and the circuit court erred by improperly speculating

1

on his future conduct. He further alleges that the court impermissibly modified the parties' parenting plan by issuing the order of protection. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Rodgers and Toberman married in 2004 and divorced in January of 2018. They have one minor child together. As part of the marriage dissolution proceedings, the parties entered into a marital settlement agreement (MSA) and an agreed parenting plan on May 25, 2018. The parenting plan allows Rodgers one video visit with the parties' child per month, as well as contact by phone and letters.

¶ 5      On September 9, 2017, Rodgers was arrested stemming from an incident that took place the same day. According to the parties' testimony at the hearing on the underlying order of protection, Rodgers and Toberman were in their front yard when Rodgers told Toberman to get off the property. When she did not leave, he fired three warning shots from his handgun. According to his testimony, Rodgers threatened to shoot Toberman, but did not actually aim at her. Rodgers contended that he did not fire at Toberman and did not intend to carry out his threat. He stated that he fired the first shot into the ground near his left foot, he fired the second shot "to keep her running," as he yelled at her to get off the property, and the third shot hit his flower bed.

¶ 6      Rodgers was arrested and originally charged with attempted murder. He was convicted of aggravated discharge of a firearm and sentenced to 10 years in the Illinois Department of Corrections (IDOC). At the time of the hearing on Toberman's petition, Rodgers was incarcerated in the Jacksonville Correctional Center.

¶ 7      On October 23, 2023, Toberman filed a petition for order of protection (petition) against Rodgers, indicating that she sought an emergency order of protection. In her petition, she stated that on October 4, 2023, she was informed by the state's attorney that Rodgers was going to be

2

placed in a work release program sometime after October 18, 2023. On October 20, 2023, Toberman received a letter from Rodgers, in which he informed her that he was being transferred to the Peoria Adult Transition Center in connection with the work release program. Toberman's petition further states that on October 21, 2023, the parties' minor child received a letter from Rodgers, in which he explained what this transfer would mean, including the ability to leave the facility for unsupervised excursions. Toberman also stated that Rodgers indicated that he would want to change the parties' current parenting plan, which did not afford him in-person visits.

¶ 8   She also mentioned that Rodgers filed numerous pleadings over the past six years in the parties' divorce case since May 2018, resulting in her experiencing lost work time, stress, fear, and extreme financial burden. She concluded that, based on Rodgers's history and the fact that he would be allowed unsupervised time outside of the facility, she feared for her wellbeing, and requested an order of protection. Although she named herself as the protected party, the circuit court added the parties' minor child to the resulting order.

¶ 9   The court held a hearing on her petition on November 9, 2023. Toberman appeared *pro se*, and testified that she was seeking a plenary order, rather than the emergency order indicated in her petition. Rodgers appeared with counsel. At the hearing, the court took judicial notice of the criminal case that resulted in Rodgers's incarceration. Toberman testified that she sought the order of protection in light of the parties' relationship history. This included the history of emotional abuse by Rodgers and the incident that led to his incarceration. She was also concerned that his transfer to the adult transition center would give him access to unsupervised free time outside the facility.

¶ 10   She also stated that while Rodgers had not directly threatened her since the September 2017 incident, he continuously filed pleadings in the divorce case, which required her continued contact

3

with him in court throughout the nearly six years that he was incarcerated. She described the motions he filed as primarily being based on accusations that she was not allowing him to communicate with his children as per the parenting plan, which she stated was false. She further stated that his voluminous filings caused immense financial stress on her and her family.

¶ 11     Toberman testified that the facility in Peoria to which Rodgers was being transferred was approximately an hour and 45 minutes away from her home. She said that Rodgers sent her and her counsel a letter requesting changes to the parenting plan because of his transfer and upcoming participation in the work release program. He had not filed any motions to modify the parenting plan, nor informed her that he intended to do so. She admitted that he did not express any intention to see their minor child in person. She expressed her fear that all of the court proceedings and appearances Rodgers caused through his filings were done because this was the only way he could have contact with her during his incarceration. She concluded that she still lived in fear every day from the 2017 shooting incident, as well as Rodgers's prior threats of physical violence at home.

¶ 12     After her testimony, Rodgers's counsel moved for a directed verdict, arguing that Rodgers had not made any threats or shown any hostility to Toberman since the 2017 incident. He had not indicated any intention to see her or his child, and his petitions to modify the MSA were not a basis for granting an order of protection. The court denied the motion and allowed Rodgers to present his defense.

¶ 13     Rodgers testified that the only communication between the parties was what was required under the parenting plan or MSA. Describing the September 2017 incident, he stated that he did not shoot with the intention of hitting her, but only to chase her off the property, and that he regretted his actions and had since worked with counselors to rebuild his life. He denied making any threats to her since this incident. He further contended that all of his filings in the divorce

4

proceedings were valid motions to enforce the MSA and parenting plan, because he wanted to see his child.

¶ 14    Rodgers testified that if the order of protection were granted, he would be immediately disqualified from the work release program, as well as from the position he had previously held as a legal clerk for IDOC. He also claimed he had recently been asked if he was interested in being an ambassador advocate for IDOC in Springfield. However, an order of protection would disqualify him from that opportunity, and would limit his ability to obtain jobs in the future.

¶ 15    He also stated that he would not be allowed to have a driver's license or a vehicle while on work release, leaving him unable to get to Toberman's home from Peoria. He further explained that his movements would be closely monitored and scheduled even during the unsupervised time that he could earn at the Peoria facility. Additionally, if he violated his itinerary, he could be sent back to prison, and/or charged with escape. He would have limited access to a cell phone in Peoria, and his cell phone would be searched. He was also limited to a specific radius for how far he was allowed to travel from the facility, and it was his understanding that he could not be more than two hours away from the facility on a weekend pass. He testified that he did not intend to establish contact with Toberman beyond what the parenting plan required, he did not intend to see his child in person because he was aware that the parenting plan only allowed for video and phone visits, and he had not filed and did not intend to file any motions to modify the parenting plan.

¶ 16    After hearing the testimony, the circuit court reviewed the relevant statutory factors pursuant to the Illinois Domestic Violence Act at section 214(c)(1) (750 ILCS 60/214(c)(1) (West 2022)). The court noted that the nature of the domestic abuse was "almost of the most severe nature"—it was, at a minimum, gunplay in the vicinity of Toberman, which was "as extreme of a domestic relationship as you can find" outside of actually shooting her. The court acknowledged

5

that it was not making a finding that the past abuse was frequent, but it found that the severity and consequences of what Rodgers did were so severe and dangerous that Toberman was forever scarred by the abuse and lived in permanent fear of Rodgers.

¶ 17    The court further found that the fear was legitimate, stating that Rodgers was going to be "out and about," and there were no guarantees that he would not find a way to gain access to Toberman. The court stated that Rodgers was "a very smart man," and could figure out how to get to Toberman and hurt her if he wanted to. Therefore, based on the severity, nature, and consequences of Rodgers's past abuse, the circuit court granted a two-year plenary order of protection. However, the court specified that it would not include the minor child as a protected party, as matters relating to the child would be addressed through the parenting plan.

¶ 18    This timely appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    Rodgers appeals *pro se* from the court's November 9, 2023 entry of the order of protection. He raises three issues on appeal, arguing: (1) Toberman's petition was an abuse of the Illinois Domestic Violence Act, filed as retaliation for what Toberman speculated would be Rodgers's future attempt to change the parties' parenting plan; (2) the circuit court's decision was against the manifest weight of the evidence and based on the court's improper speculation about Rodgers's future conduct; and (3) the court was biased against Rodgers, and its issuance of the order of protection constituted a modification of the parties' parenting plan. Toberman responds, arguing that the court is afforded deference in its consideration of the relevant statutory factors and its findings based on the evidence presented at the hearing, and its decision was not against the manifest weight of the evidence. She argues that she showed by a preponderance of the evidence

6

that she was abused by Rodgers, specifically when he shot at her and threatened her in September 2017. For the reasons that follow, we agree with Toberman and affirm.

¶ 21 The Illinois Domestic Violence Act (Act) (750 ILCS 60/101 *et seq.* (West 2022)) allows a petitioner to request from the court an order of protection to protect the petitioner and/or specified persons from harassment, abuse, threats, neglect, interference with personal liberties, or exploitation. The Act is to be liberally construed to promote its purposes, which include protecting victims of domestic violence from further abuse "by promptly entering and diligently enforcing court orders which prohibit abuse and, when necessary, reduce the abuser's access to the victim and address any related issues of child custody and economic support, so that victims are not trapped in abusive situations by fear of retaliation, loss of a child, financial dependence, or loss of accessible housing or services." *Id.* § 102(4); see also *Moore v. Green*, 219 Ill. 2d 470, 480-81 (2006).

¶ 22 Before issuing an order of protection, the court must make certain findings in "an official record or in writing." 750 ILCS 60/214(c)(3) (West 2022); see also *Landmann v. Landmann*, 2019 IL App (5th) 180137, ¶ 14. The Act requires the court to consider relevant factors, which include but are not limited to:

> "the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect or exploitation of the petitioner or any family or household member, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household." 750 ILCS 60/214(c)(1)(i) (West 2022).

The Act requires the court to make a finding of abuse by a preponderance of the evidence. *Id.* § 214(a); *Best v. Best*, 223 Ill. 2d 342, 348 (2006) ("In any proceeding to obtain an order of protection, the central inquiry is whether the petitioner has been abused.").

7

¶ 23    We will not disturb the circuit court's determination unless it is against the manifest weight of the evidence. *Best*, 223 Ill. 2d at 349. A judgment is against the manifest weight of the evidence "if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* at 350 (citing *In re D.F.*, 201 Ill. 2d 476, 498 (2002)). In determining whether a judgment is against the manifest weight of the evidence, we review the evidence in the light most favorable to the appellee. *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004). Under the manifest weight of the evidence standard, we accord deference to the circuit court as the finder of fact because it is best positioned to observe the conduct and demeanor of the parties and witnesses. *Id.* at 515.

¶ 24    First, Rodgers argues that Toberman sought an order of protection to retaliate against him, because she believed he would seek to modify their parenting plan in the future. In support, he states that her allegations of his abuse were unspecific and unsupported by evidence in the record. He also argues that Toberman falsely accuses him of seeking to change the parenting plan once he was on work release in Peoria. He broadly contends that Toberman's evidence of abuse consisted of one incident from 2017 and unsubstantiated speculation that he was using litigation to force contact with and/or harass her and would attempt to modify the parenting plan to have greater access to their child. He adds that, since 2017, his only attempts to contact Toberman have been limited to what was necessary to carry out the parenting plan, and not to abuse or harass her.

¶ 25    Relying on *Radke v. Radke*, 349 Ill. App. 3d 264 (2004), Rodgers contends that an order of protection is not the proper mechanism for resolving issues of child custody or visitation. In *Radke*, the petitioner admitted that she sought an order of protection to temporarily suspend the respondent's visitation with their child. *Id.* at 269. The court stated that this was not only an inappropriate use of the Act, but that the order of protection did not restrict the respondent's

8

visitation; rather, it was tailored "to prohibit physical abuse, harassment, interference with personal liberty or intimidation." *Id.* In a later decision, this court determined that *Radke* "stand[s] for the principle that visitation or custody issues should not be addressed at an order-of-protection hearing where the primary objective of the party seeking an order of protection is really to interfere with or change a child custody or visitation order." *Sutherlin v. Sutherlin*, 363 Ill. App. 3d 691, 695 (2006).

¶ 26    We find *Radke* distinguishable from the facts of this case. In *Radke*, the lower court did not make a finding of physical abuse, and on appeal, the court found that the evidence did not establish harassment. *Radke*, 349 Ill. App. 3d at 267-68. Moreover, in *Radke*, the petitioner further testified that she sought an order of protection on behalf of her minor child for the purpose of suspending the respondent's visitation of the child. *Id.* at 265-66. In the present matter, Toberman was granted an order of protection covering herself as the protected person. While she mentioned her concern that Rodgers's transfer to Peoria and starting the work release program would give him access to unsupervised free time outside the facility, she did not state in either her petition or testimony that she wanted the order of protection to limit Rodgers's access to their child. She did not express any intention of modifying the parenting plan to limit his current level of access, or to use the order of protection to circumvent the visitation rights he currently has. The circuit court here, unlike in *Radke*, made a finding that Toberman had been abused by Rodgers, based on the 2017 incident. The court further considered her testimony that she still lives in fear of him because of the prior abuse she endured. The record shows that the court's decision to grant the order of protection was based on its finding of abuse under the relevant factors of section 214(c)(1) of the Act, not on any concerns Toberman had about Rodgers trying to modify the parenting plan in the future.

9

¶ 27    The bulk of Rodgers's argument of Toberman's alleged improper motive for seeking an order of protection relates to his disputing the facts she presented. We note that, under the manifest weight of the evidence standard, we defer to the findings of the circuit court. Having had the opportunity to directly observe the parties during the hearing, the court was best positioned to assess their credibility and resolve conflicting testimony. *V&T Investment Corp. v. West Columbia Place Condominium Ass'n*, 2018 IL App (1st) 170436, ¶ 33 ("The trial court is in the best position to resolve conflicts in the evidence and evaluate witnesses' credibility."). The circuit court did not find that Toberman abused the Act, either to retaliate against Rodgers or to preemptively decrease his visitation rights. With no support in the record for Rodgers's position, we also decline to make any such finding.

¶ 28    Next, Rodgers argues that the circuit court's entry of an order of protection was against the manifest weight of the evidence, because Toberman failed to show abuse by a preponderance of the evidence. He raises the same points as in his previous argument, regarding Toberman's lack of evidentiary support for her claims of emotional abuse, and her allegedly false statements about his harassing litigation in the divorce case. He asserts that he has no intention to contact Toberman, and that his motions in the divorce matter were filed for the proper purpose of enforcing the parenting plan and MSA in the face of Toberman's violations. He notes that Toberman herself testified that Rodgers had not directly threatened her since the incident, had not told her that he intended to file a motion to modify the parenting plan, and had not expressed any intention to visit their child in person. We disagree.

¶ 29    Regarding the court's finding of abuse based on the September 2017 incident, Rodgers acknowledges that Illinois courts have not placed a limit on how recent the abuse must be in order to warrant issuing an order of protection, and that the Act does contain a statute of limitations on

10

a petition for an order of protection. Rodgers cites to and distinguishes *A.A. v. Nita A.*, 2023 IL App (1st) 230011, in which the respondent argued that the limitations period applicable to orders of protection was the five-year period set forth in the Code of Civil Procedure for civil actions that are not governed by a specific statute of limitations. He argues that, unlike in *A.A.*, there was no new evidence of abuse in the present matter since the 2017 incident. See *id.* ¶ 3 (petitioner alleged abuse occurred throughout eight-year period).

¶ 30    In *A.A.*, the court first explained that the parties conflated two separate issues: whether a petition for an order of protection could be premised on events occurring more than five years before filing, and whether the court could consider evidence of abuse that occurred over five years before filing. *Id.* ¶ 33. The court did not make any ruling on the first argument, having found that the respondent waived it by failing to timely raise it before the trial court. *Id.* ¶ 35. However, the court did note that there did not appear to be any caselaw that either supported this position, or imposed any statute of limitations on petitions for orders of protection. *Id.* ¶ 34.

¶ 31    On the evidentiary question, the court agreed with the trial court's decision to consider evidence of abuse that occurred more than five years ago. *Id.* ¶ 44. It stated that, pursuant to the holding in *Richardson v. Booker*, "evidence of past abuse is relevant to a trial court's determination as to whether abuse occurred, regardless of whether the prior abuse 'occurred 40 years ago or 5 years ago.' " *Id.* (quoting *Richardson v. Booker*, 2022 IL App (1st) 211055, ¶ 59). This is because the Act " 'expressly directs courts to consider instances of past abuse' without limitation as to time." *Id.* (quoting *Richardson*, 2022 IL App (1st) 211055, ¶ 56); 750 ILCS 60/214(c)(1)(i) (West 2022). The *Richardson* court further found that the trial court erred in according "limited relevance" to evidence of abuse that occurred in 2015 when determining whether abuse occurred during incidents from 2020 and 2021. *Richardson*, 2022 IL App (1st) 211055, ¶¶ 55-57.

¶ 32    In the present matter, we are not tasked with reviewing the circuit court's findings regarding whether abuse occurred, unlike the discussions in *A.A.* and *Richardson*. Here, while the parties disagree on the specific circumstances surrounding the incident in question, it is undisputed that Rodgers was convicted of aggravated discharge of a firearm for firing three shots in Toberman's vicinity to threaten her. However, these decisions are instructive in confirming that the circuit court properly considered this instance of abuse in its ruling on Toberman's petition, without giving it less weight because it occurred in the past.

¶ 33    The circuit court explained its review of the relevant statutory factors on the record in rendering its decision on the order of protection. Regarding the 2017 incident, the court heard testimony from both parties, including Toberman's statement that she still lives in fear of Rodgers every day due to this incident, as well as prior threats of physical violence and past emotional abuse. The court also heard Rodgers's statements that he regretted his actions, that he did not intend to contact her, and that the conditions of the work release program and the level of security at the Peoria facility would limit his opportunities to contact her even if he wanted to.

¶ 34    Rodgers has not shown any reason why the court should have afforded lesser significance to the 2017 incident, because it did not occur within five years of Toberman's petition. To the contrary, the caselaw he cites only reinforces that the court properly considered the past abuse pursuant to section 214(c)(1) of the Act. We do not disregard any of the arguments Rodgers made at the hearing—however, our task on appeal is to determine whether the circuit court's findings were so unreasonable or arbitrary that its judgment was against the manifest weight of the evidence. As previously stated, we review the evidence in the light most favorable to Toberman, and we defer to the circuit court as the finder of fact, best positioned to observe the parties' conduct and demeanor and resolve conflicting testimony.

¶ 35    Here, the court addressed section 214(c)(1)'s factors of "the nature, frequency, severity, pattern and consequences of the respondent's past abuse," noting that the element of frequency did not weigh in favor of issuing the order of protection. However, the court found that the abuse was "almost of the most severe nature," and that Rodgers's act of firing a gun in Toberman's vicinity was "almost as extreme of a domestic situation as you can find" outside of actually shooting her. It further found that Toberman's claims of fear were legitimate, based on the past abuse and in light of the possibility that he would be allowed outside in the near future. In finding that the severity and consequence factors supported an order of protection, the court declined to adopt Rodgers's arguments about his intentions and the effects that an order of protection would have on his future job prospects both in and out of prison. However, the record does not indicate that the court's decision was not based on all the evidence presented, or that the opposite conclusion was clearly evident.

¶ 36    Rodgers raises an additional point, that the circuit court engaged in improper speculation about his future conduct while on work release. He argues that Toberman did not present any evidence that would support the court's alleged speculation, and that an order of protection cannot be based on speculation or conjecture. See *In re Marriage of Healy*, 263 Ill. App. 3d 596, 600-01 (1994) ("Although the *** [Act] is to be construed liberally ***, there must be some evidence in the record to support the relief requested." (Internal quotation marks omitted.)). The court heard his testimony about the limitations that would be placed on his ability to move around freely while on work release, but stated that there were "no guarantees"; Rodgers was "a very smart man" who was going to be "out and about" and "could find access" to Toberman if he wanted to hurt her.

¶ 37    The purpose of an order of protection is to protect domestic violence victims from further abuse. 750 ILCS 60/102(4) (West 2022). Included in the factors a court should consider is "the

13

likelihood of danger of future abuse." *Id.* § 214(c)(1)(i). To the extent that Rodgers's argument is that the court cannot contemplate his future actions, as the respondent to Toberman's petition, he is mistaken. Regarding his claim that the court's speculation was not supported by the evidence, as evidenced above, we determine that they were not unreasonable, arbitrary, or contrary to the evidence. Therefore, we find that the circuit court's decision was not against the manifest weight of the evidence.

¶ 38    Rodgers's final argument is that the circuit court predetermined that it would grant the order of protection before hearing Rodgers's testimony, when it told Rodgers's counsel that it was inclined to grant the petition, but was "struggling with how to incorporate this minor child back into [Rodgers's] life." He adds that the court added the parties' child to the petition where Toberman had not done so, further showing its alleged bias against him. Rodgers adds that the court drew factually incorrect conclusions from his prior conviction when it commented, "He shot at her. He was convicted of it." He also believes that the court was prejudiced against him as an "individual in custody," and wrongfully disqualified him from the work release program. Lastly, Rodgers argues that the circuit court actually modified the parties' parenting plan by issuing the order of protection in several ways, without making the requisite findings of a substantial change in circumstances and that modification is necessary to serve the best interests of the child. 750 ILCS 5/610.5(c) (West 2022).

¶ 39    We find no evidence of prejudice in any of the examples Rodgers presents. The transcript of the order of protection hearing does not demonstrate that the judge made up his mind to rule in favor of Toberman before hearing and considering all of the evidence. It also does not show that he was prejudiced against Rodgers based on his notice of Rodgers's criminal case or his rulings in the divorce case. The comment the court made before hearing Rodgers's testimony was in

14

connection to ruling on his counsel's motion for a directed verdict, and in context, does not demonstrate bias. See *People v. Sims*, 403 Ill. App. 3d 9, 24 (2010) ("We are mindful that a reviewing court should not focus on a few words or statements made by the trial court, but must consider the record as a whole."). On the contrary, the court expressed that it wanted to "figure out a way he can physically see his child," and to incorporate the child back into his life, even though Rodgers himself testified that he had no intention to seek any visitation rights beyond the current terms of the parenting plan.

¶ 40    Moreover, the court properly took judicial notice of Rodgers's criminal case and felony conviction stemming from the 2017 incident. *In re Marriage of DeBow*, 236 Ill. App. 3d 1038, 1040 (1992). Rodgers's conviction was relevant to the evidence of past abuse, and the court did not draw any false conclusions or exhibit any bias based on its awareness of the criminal matter. Furthermore, Rodgers fails to show any evidence of prejudice stemming from the judge's involvement in the related divorce case.

¶ 41    The record does not indicate why the court initially added the parties' child to Toberman's petition as a protected person. Toberman did not check any of the boxes under the section of her petition that indicates "People to be Protected by this Order," including the box next to "Petitioner." Furthermore, she alleged in her petition that she feared Rodgers would seek to modify the parenting plan, and that he sent their child a letter explaining that he would be able to leave the facility without supervision once he was transferred. Therefore, the court's inquiry into whom Toberman sought to protect by filing her petition was relevant to its review.

¶ 42    Regardless of whether Toberman intended to include the child as a protected person, the court ultimately issued the order of protection covering only Toberman, stating that it was "not going to include it on the minor child. That will be addressed through the parenting plan." As

15

Rodgers himself noted earlier in his argument, an order of protection is not the proper mechanism for resolving visitation issues, and the court made its determination based on its findings of abuse by Rodgers against Toberman, and not on the parties' arguments about Rodgers's intentions of further contact with their child. Therefore, this also does not support Rodgers's allegations of bias.

¶ 43 Rodgers does not provide any authority for his position that a court cannot issue an order of protection where the respondent stands to lose his approval for an IDOC work release program, or that such a ruling would constitute voiding IDOC's decision. To the extent that he brings such a claim on appeal, we add that while he did testify that his work release status could be affected, he did not raise before the circuit court any argument that the court was prohibited from issuing the order of protection for this reason. Therefore, we additionally find that this argument fails because he has waived it on appeal. See *Herbert v. Cunningham*, 2018 IL App (1st) 172135, ¶ 37 ("Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal." (Internal quotation marks omitted.)).

¶ 44 Similarly, Rodgers has forfeited the argument that the court improperly modified the parenting plan, by raising it for the first time on appeal. *Id.* However, as already discussed above, the related point of whether the court made the child a protected party under the order of protection, we add here that there is no support for Rodgers's claim that the court modified the parenting plan. He lists three alleged modifications that the court created as a result of its decision, but does not explain how prohibiting his contact with Toberman negates the aforementioned clauses and agreement. We repeat that the court left the matter of Rodgers's visitation rights to the parenting plan, and did not alter anything about his current ability to continue communicating with his child via video, phone, and letters. Therefore, we find that the circuit court did not exhibit bias against Rodgers at the hearing.

16

¶ 45                                          III. CONCLUSION

¶ 46     For the reasons stated, the Christian County circuit court's decision to grant a plenary order

of protection was not against the manifest weight of the evidence. The judgment of the circuit court

is affirmed.


¶ 47     Affirmed.